**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Joan Wolf,

          Plaintiff,

v.

Discover Financial Services Incorporated,

          Defendant.

No. CV-19-04989-PHX-JAT

**ORDER**

Pending before the Court are Defendant Discover Financial Services Incorporated's Motion for Judgment on the Pleadings (Doc. 60), Defendant's Request for Summary Disposition (Doc. 67), and Plaintiff Joan Wolf's Motion for Leave to File a Late Opposition Response to Defendant's Motion for Judgment on the Pleadings (Doc. 72). The Court now rules on each of these motions.

## I.    DEFENDANT'S REQUEST FOR SUMMARY DISPOSITION

Defendant asks the Court to grant summary disposition on its Motion for Judgment on the Pleadings (Doc. 60) as a result of Plaintiff's failure to timely respond to that Motion (Doc. 60). (Doc. 67). Plaintiff has sought leave to file a response to the Motion for Judgment on the Pleadings (Doc. 60). (Doc. 72).

When a party fails to timely act, a court may extend the time to act for good cause if that party failed to act as a result of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). "[I]t is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the

movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (footnotes and citations omitted). "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (citations omitted). Rule 6(b)(1)(B), "like all the Federal Rules of Civil Procedure, is to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Id.* at 1258–59 (internal quotation marks and citations omitted).

Plaintiff has met her burden under Rule 6(b)(1)(B). Thus, Plaintiff's Motion (Doc. 72) will be granted, and Defendant's Request for Summary Disposition (Doc. 67) will be denied.

First, there is little, if any, prejudice to Defendant. Defendant claims that the delay has prejudiced Defendant because it drafted the Motion for Summary Disposition (Doc. 67) as a result of Plaintiff's failure to respond to the Motion for Judgment on the Pleadings (Doc. 60), which caused it to incur additional expenses. (Doc. 77 at 2). The Ninth Circuit has rejected similar claims of prejudice. For example, in *Bateman v. United States Postal Service*, the Ninth Circuit concluded that a defendant's loss of "a quick victory" based on a plaintiff's failure to respond to that defendant's summary judgment motion was not so prejudicial that it should preclude relief under Rule 6(b)(1)(B) despite the fact that the defendant "filed papers . . . asking that its motion be granted as unopposed," just as Defendant did here. 231 F.3d 1220, 1223, 1224–25 (9th Cir. 2000). Here, the additional costs of litigation that resulted from Plaintiff's failure to timely respond and the potential—rather than the *actual*—loss of a victory due to Plaintiff's failure to respond do not constitute cognizable forms of prejudice, especially in light of the fact that cases should be decided on the merits when possible. *Evangelista v. Just*

*Energy Mktg. Corp.*, No. SACV1702270CJCSSX, 2018 WL 4849673, at \*3 (C.D. Cal. July 9, 2018). This factor favors Plaintiff.

Second, the delay was not excessive. The deadline to respond to Defendant's Motion for Judgment on the Pleadings was May 15, 2020. (Doc. 66). Defendant filed its Motion for Summary Disposition a week later on May 22, 2020. (Doc. 67). Plaintiff claims that she filed her response by mail on May 9, 2020; realized, on May 23, 2020, that the filing had been returned to sender; and then sought leave to file her untimely response on May 28, 2020. (Doc. 72 at 2–3). A less-than-two-week delay does not justify denying a motion for extension of time under Rule 6(b)(1)(B). *See Bateman*, 231 F.3d at 1225 (finding a nearly-one-month delay "not long enough to justify denying relief"); *Evangelista*, 2018 WL 4849673, at \*3 (concluding delay of twenty-five days weighed in favor of granting relief). Indeed, Defendant did not show this two-week delay has had any effect on the progress of this case. *See Bateman*, 231 F.3d at 1225. This factor also favors Plaintiff.

Third, the reason for delay also favors Plaintiff as Plaintiff has established excusable neglect. Plaintiff claims that she failed to timely file her response because she mistakenly addressed the filing, and it was returned to sender. (*See* Doc. 72 at 3; *id.* at 6). Defendant simply notes in response that the reason for delay was Plaintiff's "failure to comply with applicable rules of procedure." (Doc. 77 at 2). But "[t]he right way, under *Pioneer*, to decide cases involving" the failure to comply with applicable rules of procedure "is with an 'elastic concept' equitable in nature, not with a per se rule." *See Pincay v. Andrews*, 389 F.3d 853, 858–60 (9th Cir. 2004) (en banc) (citation omitted) (holding that district court was within its discretion to grant relief under the same factor test as required by Rule 6(b)(1)(B) while recognizing that the excuse presented there, "[the] failure to read an applicable rule[,] is one of the least compelling excuses that can be offered"). Even an attorney's near-month-long delay in filing a response to summary judgment "based on his recovery from jet lag and the time it took to sort through the mail that had accumulated while he was away" has been excused. *See Bateman*, 231 F.3d at

1223, 1225; *see also Ahanchian*, 624 F.3d at 1262 (concluding that "a calendaring mistake caused by the failure to apply a clear local rule," while an admittedly "weak justification for . . . delay," constituted excusable neglect). The Court likewise finds that Plaintiff's less egregious error does not preclude a finding of excusable neglect.

Finally, there is no indication of bad faith here. The good faith analysis under Rule 6(b)(1)(B) looks to "whether the failure to file in a timely fashion was 'in bad faith or [in an attempt] to obtain any advantage.'" *Goens v. Adams & Assocs., Inc.*, No. 216CV00960TLNKJN, 2018 WL 263896, at *4 (E.D. Cal. Jan. 2, 2018) (alteration in original) (citation omitted); *see Ahanchian*, 624 F.3d at 1262; *see also Pincay*, 389 F.3d at 861 (Berzon, J., concurring) ("The good faith consideration goes to the absence of tactical or strategic motives, not to the degree of negligence."). Plaintiff claims that her failure to timely file was not the result of bad faith but instead "an honest mistake made by [Plaintiff] in the Court's address." (Doc. 72 at 3–4). Mistakes in addressing happen, and it is possible that Plaintiff was on vacation and did not check her mail for several weeks as she asserts. (*Id.*). The fact that Plaintiff has produced an envelope addressed to the Court with a NIXIE label that is dated as processed on May 9, 2020 tends to show that she did not fabricate her excuse simply to buy more time. (*Id.* at 6); *see Ahanchian*, 624 F.3d at 1262 (finding this factor favored relief where "mistake was not a bad-faith, post-hoc rationalization concocted to secure additional time"). In short, while Plaintiff should have been more cautious in both properly filing the Response (Doc. 70) and checking her mail considering she has a pending case in which she is representing herself, the facts here simply do not appear to rise to the level of bad faith. *Bateman*, 231 F.3d at 1225.

The equities favor Plaintiff. Therefore, her Motion for Leave to File a Late Opposition Response to Defendant's Motion for Judgment on the Pleadings (Doc. 72) will be granted, and consequently, Defendant's Request for Summary Disposition (Doc. 67) will be denied.

## II.   DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

As noted, Defendant has filed a Motion for Judgment on the Pleadings (Doc. 60). Plaintiff opposes that Motion (Doc. 60). (Doc. 70).

### a.   Background

The operative complaint is the First Amended Complaint. (Doc. 12). Defendant has answered. (Doc. 17). The following facts are either undisputed or recounted in the light most favorable to Plaintiff, the non-movant. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Defendant hired Plaintiff in September 1993 as a Cardmember Senior Prevention Specialist in the fraud department within Defendant's call center in Phoenix, Arizona. (Doc. 12 at 5; Doc. 17 at 3). Plaintiff took a medical leave of absence from August 22, 2017 to February 14, 2018 in order to get throat and nose surgery to treat sleep apnea. (Doc. 12 at 5; Doc. 17 at 3).

On March 29, 2018, after returning to work, Plaintiff claims that the "phone work" that was required by her position was straining her voice, and she requested no phone work until May 23, 2018 based on a doctor's recommendation. (Doc. 12 at 7). Plaintiff claims that she "suggested a number of positions that did not require that she use the phone" and that her manager falsely indicated there were no such positions. (*Id.*). Plaintiff asserts that she was "forc[ed] . . . to take short term disability [sic]" as a result despite the fact that Defendant "could have accommodated" her with a different position. (*Id.* at 7–8). Plaintiff alleges that while she was on short-term disability, human resources "continued to insist [Defendant] had no work for [Plaintiff]" and that Defendant "offered her part-time phone work instead." (*Id.* at 8; *see* Doc. 17 at 4). But, according to Plaintiff, part-time phone work was not suitable "because it would cause permanent damage to her vocal cords." (Doc. 12 at 8; *see* Doc. 17 at 4). On May 30, 2018, Plaintiff's doctor recommended that Plaintiff perform no phone work until July 30, 2018. (Doc. 12 at 8; Doc. 17 at 4). In response, Plaintiff took paid time off to extend her leave. (Doc. 12 at 8).

Plaintiff claims that she "attempted to engage in an interactive process with [Defendant] on three separate occasions" and that her "emails and phone calls to [human resources] went unanswered." (*Id.*). As a result, Plaintiff alleges that she submitted a charge of disability discrimination on July 18, 2018. (*Id.*; *see* Doc. 17 at 4; Doc. 15-2[1] (charge to EEOC)). Plaintiff received her right to sue based on the charge on May 25, 2019. (Doc. 12 at 11; Doc. 15-3).

### b.   Legal Standard

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

The analysis of a defendant's Rule 12(c) motion is "substantially identical" to the analysis of a Rule 12(b)(6) motion because, under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). When considering a Rule 12(c) motion, review is limited to the complaint and any attachments to the complaint, documents that are incorporated into the complaint by reference, and "facts that are contained in materials of which the court may take judicial notice." *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999); *Fed. Trade Comm'n v. LendingClub Corp.*, No. 18-CV-02454-JSC, 2020 WL 2838827, at *24 (N.D. Cal. June 1, 2020) (citation omitted). A court considering a defendant's Rule 12(c) motion must accept the plaintiff's factual allegations as true.

---

[1] Though Plaintiff did not attach the charge (Doc. 15-2) until nearly two weeks after filing the First Amended Complaint (Doc. 12), Defendant does not object, and thus, the Court will consider the attachments as properly attached to the First Amended Complaint (Doc. 12). (*See* Docs. 15, 15-1, 15-2, 15-3 (attachments)). Consequently, Plaintiff's charge to the EEOC can be considered in ruling on Defendant's Motion (Doc. 60). *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999); *Fed. Trade Comm'n v. LendingClub Corp.*, No. 18-CV-02454-JSC, 2020 WL 2838827, at *24 (N.D. Cal. June 1, 2020) (citation omitted).

*Chavez*, 683 F.3d at 1108. However, courts may not accept legal conclusions couched as factual allegations. *See id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to survive a Rule 12(c) motion. *Barker v. Gottlieb*, 978 F. Supp. 2d 1168, 1173 (D. Haw. 2013) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). To prevail over a defendant's Rule 12(c) motion for judgment on the pleadings, a plaintiff must show that the complaint contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chavez*, 683 F.3d at 1108 (quoting *Iqbal*, 556 U.S. at 678).

### c. Analysis

Plaintiff alleges three claims in the First Amended Complaint: (1) a disability discrimination claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); (2) a retaliation claim under the ADA, 42 U.S.C. § 12203(a); and (3) a retaliation claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d).[2] (Doc. 12). The Court will take each claim in turn.

### 1. Disability Discrimination Under the ADA

The ADA forbids an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "'[Q]ualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). An employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental

---

[2] Plaintiff also alleged a defamation claim that was dismissed as a result of the parties' stipulation. (Doc. 26; Doc. 27).

limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Id.* § 12112(b)(5)(A) (emphasis added). Therefore, a plaintiff can establish a prima facie case for failure to accommodate under the ADA where she establishes: "(1) she is disabled; (2) she is qualified for the job in question and capable of performing it with reasonable accommodation; (3) the employer had notice of her disability; and (4) the employer failed to reasonably accommodate her disability." *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1030 (W.D. Wash. 2015) (citations omitted).

Defendant has not challenged Plaintiff's allegations regarding her disability, her qualifications, or that it had notice of her disability. (Doc. 60). Rather, the key dispute between Plaintiff and Defendant is whether Defendant failed to reasonably accommodate Plaintiff's disability.

Plaintiff alleges Defendant did not reasonably accommodate her disability because it did not reassign her to a vacant position. (Doc. 12 at 7–8). More specifically, Plaintiff claims her throat surgery prevented her from doing phone work and that she requested reassignment to a vacant position that did not include phone work. (*Id*). Defendant responds that it satisfied its obligations under the ADA. (Doc. 60; *see also* Doc. 17 at 3–4).

The ADA explicitly provides that the term "reasonable accommodation may include . . . reassignment to a vacant position." 42 U.S.C. § 12111(9)(B); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002). The reasonableness of a particular accommodation is a fact-intensive inquiry that must be decided on a case-by-case basis. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999).

When an employer becomes aware of the employee's need for accommodation, the employer must "engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (citation omitted). "An appropriate reasonable

accommodation must be effective[] in enabling the employee to perform the duties of the position." *Id.* "The interactive process is the key mechanism for facilitating the integration of disabled employees into the workplace." *Vanderpool v. Sysco Food Servs. of Portland, Inc.*, 177 F. Supp. 2d 1135, 1140–41 (D. Or. 2001) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated sub nom. US Airways, Inc.*, 535 U.S. 391). The process is intended to "foster[] the framework of cooperative problem-solving contemplated by the ADA" as it "encourag[es] employers to seek to find accommodations that really work" and because it "avoid[s] the creation of a perverse incentive for employees to request the most drastic and burdensome accommodation possible out of fear that a lesser accommodation might be ineffective." *U.S. E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1111 (9th Cir. 2010) (second and third alterations in original).

Accordingly, "[t]he interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citation omitted); *see also* 29 C.F.R. Pt. 1630, App. (noting that an employer "should . . . [c]onsider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer"). The employer and employee must explore possible accommodations in good faith. *Humphrey*, 239 F.3d at 1137–38. And the employer's duty to explore possible accommodations "is a continuing duty that is not exhausted by one effort." *McAlindin v. County of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999) (internal quotation marks and citation omitted), *opinion amended on denial of reh'g*, 201 F.3d 1211 (9th Cir. 2000). "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process." *Zivkovic*, 302 F.3d at 1089 (internal quotation marks and citation omitted). "Employers, who fail to engage in the interactive process in good faith,

1    face liability for the remedies imposed by the statute if a reasonable accommodation

2    would have been possible." *Humphrey*, 239 F.3d at 1137–38 (citation omitted).

3         Plaintiff alleges just that. She claims Defendant refused to engage in the

4    interactive process, and thus, her disability was not reasonably accommodated. (Doc. 12

5    at 7–9; Doc. 70 at 9–11). However, Defendant asserts it satisfied its duty to take part in

6    the interactive process as, according to Plaintiff's charge to the EEOC, a human resources

7    representative spoke with Plaintiff numerous times. (Doc. 60 at 12 n.6 (citing Doc. 15-2

8    (Plaintiff's charge))). Yet communication is not all that is required by the interactive

9    process. Instead, as noted, "[t]he interactive process requires: (1) direct communication

10   between the employer and employee to explore in good faith the possible

11   accommodations; (2) consideration of the employee's request; and (3) offering an

12   accommodation that is reasonable and effective." *Zivkovic*, 302 F.3d at 1089. Boiled

13   down, Plaintiff asserts that Defendant did not engage in the interactive process in good

14   faith or truly consider her request. (Doc. 12 at 7–9). Defendant may believe that it did

15   perform its obligations in good faith and may even have evidence to support that belief.

16   But a motion for judgment on the pleadings is not the appropriate vehicle to resolve such

17   a dispute.

18        Even so, a failure to engage in the interactive process is not actionable in and of

19   itself. *Humphrey*, 239 F.3d at 1137–38; *see also Kramer v. Tosco Corp.*, 233 F. App'x

20   593, 596 (9th Cir. 2007) ("[F]ailure to engage in that process is not itself evidence of

21   failure to reasonably accommodate."). The plaintiff employee must still show that the

22   failure to engage in the interactive process resulted in a failure to reasonably

23   accommodate the plaintiff's disability. *Humphrey*, 239 F.3d at 1137–38.

24        Defendant argues that it cannot be liable for failure to reassign Plaintiff because

25   Defendant claims it reasonably accommodated Plaintiff by allowing her to take leave.

26   (Doc. 60 at 12–13). The key to Defendant's argument is its assertion that "[t]he ADA

27   does not require [that] an employer grant the employee's specific requested

28   accommodation." (*Id.* at 13). Accordingly, if Defendant is correct that leave was a

reasonable accommodation, liability cannot attach under the ADA as the ADA's provisions only require Defendant to reasonably accommodate Plaintiff's disability. *Zivkovic*, 302 F.3d at 1089. Stated differently, an employer need not accommodate an employee in the exact manner the employee requests or prefers. *See id.*

"A leave of absence for medical treatment may be a reasonable accommodation under the ADA" where it "permit[s] [an employee], upon [her] return, to perform the essential functions of [her] job." *Humphrey*, 239 F.3d at 1135–36. But here, Plaintiff did not request leave because Plaintiff could work; her disability simply limited her in what work she could perform. (Doc. 12 at 7–8). Plaintiff had taken about six months of medical leave by the time she requested reassignment in March 2018. (*Id.* at 5–8). Further, at that time, her doctor had only recommended a restriction of no phone work due to the strain it would cause on her vocal cords. (*Id.* at 7–8). Plaintiff asserts that she was "forc[ed] to take short term disability" and paid time off "when . . . [Defendant] could have accommodated [her]" by reassigning her to another vacant position. (Doc. 12 at 7–8). At this stage, it is simply inappropriate to determine whether leave was a reasonable accommodation considering Plaintiff's allegation that there were available, vacant positions that she could perform. *Mois v. Wynn Las Vegas LLC*, 715 F. App'x 600, 601 (9th Cir. 2017) (concluding that leave was an unreasonable accommodation when employer failed to show reassignment would create an undue hardship); *Dang v. Solar Turbines, Inc.*, No. 07CV520 BTMPOR, 2007 WL 4536632, at *4 (S.D. Cal. Dec. 18, 2007) ("Whether reinstatement and transfer to a different position after the long term [sic] leave enjoyed by [p]laintiff constitutes a reasonable accommodation will be a factual question."); *see also Nunes*, 164 F.3d at 1247 ("Determining whether a proposed accommodation (medical leave in this case) is reasonable . . . requires a fact-specific, individualized inquiry."). The fact that Defendant allowed Plaintiff to take leave therefore is not dispositive at this time.

Finally, Defendant contends that Plaintiff's allegations do not sufficiently establish that reassignment was a reasonable accommodation because Plaintiff does not identify

any vacant position that she was qualified to fill in the First Amended Complaint (Doc. 12). (Doc. 60 at 13 n.7). To show that reassignment constitutes a reasonable accommodation, a plaintiff must establish not only that there was a vacant position available but also that she is qualified to fill that vacant position. *Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006).

Plaintiff has alleged that there were vacant positions and that she was qualified to fill them. (Doc. 12 at 7–9 ("[Plaintiff] . . . suggested a number of positions that did not require that she use the phone."); *see id.* at 7–8 (stating there were non-phone positions available and Defendant "could have accommodated [Plaintiff]"); *see also* Doc. 15-2 at 1 ("I have provided information for jobs that I can perform as an accommodation . . . .")). At this stage, Plaintiff's allegations must be taken as true. *Williams v. Am. Airlines, Inc.*, No. 19-CV-08434-JSC, 2020 WL 1330388, at *5 (N.D. Cal. Mar. 23, 2020).

It is not clear that Plaintiff's allegations are sufficient. However, the deadline for amendment has passed, and the Court will not entertain another round of amendments at this late stage. As the Court previously recognized, there was no deadline for filing motions to amend the complaint as the parties implicitly represented in the Joint Rule 26(f) Case Management Plan that no amendment would be necessary. (Doc. 55; *see* Doc. 28). It is suspect that Plaintiff would have agreed to no amendments to the complaint if she had known that Defendant was planning on later filing a motion to dismiss and the instant Motion for Judgment on the Pleadings (Doc. 60). These motions came several months after Plaintiff's counsel withdrew, further complicating the issue as now Plaintiff is proceeding pro se. Moreover, Defendant filed the Motion for Judgment on the Pleadings (Doc. 60) approximately eight months after Plaintiff filed the original Complaint (Doc. 1) and about seven after Plaintiff filed the First Amended Complaint (Doc. 12). And Defendant has asserted, at least since November 2019, that there were no vacant positions that Plaintiff could fill. (Doc. 28 at 3). There is no apparent reason why Defendant could not have sought dismissal sooner based on its theory that Plaintiff failed

to identify, in the First Amended Complaint (Doc. 12), what vacant positions she was qualified to fill.

If Defendant had done so, Plaintiff would have had the opportunity to potentially cure any deficient allegations before the deadline to amend expired. The Court must apply the timeliness requirements equally. It is the lateness of Defendant's Motion (Doc. 60) that has created issues related to the timeliness of any potential amendment to the pleadings by Plaintiff.

The Court will therefore accept Plaintiff's allegation that she had the requisite qualifications for vacant positions—for purposes of ruling on the Motion for Judgment on the Pleadings (Doc. 60) alone—despite her failure to identify any of these positions in the First Amended Complaint (Doc. 12). *See Dang*, 2007 WL 4536632, at *4 (denying motion to dismiss claim under ADA for failure to reassign plaintiff to a different position despite the fact that the pro se plaintiff did not identify specific vacant positions in the complaint). *But see Sinyan v. Swedish Hosp. Med. Ctr.*, 482 F. App'x 209, 210 (9th Cir. 2012) (affirming dismissal where pro se plaintiff did not "allege facts sufficient to show that there was a vacant position and that she was qualified for such a position"). Granting the Motion (Doc. 60) based on Plaintiff's failure to identify vacant positions at this stage would likely just cause excessive delay. Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."); *Sec. & Exch. Comm'n v. Hemp, Inc.*, No. 216CV01413JADPAL, 2018 WL 1220566, at *2 (D. Nev. Mar. 8, 2018) (denying motion for judgment on the pleadings where court found that the motion "cause[d] undue and unnecessary delay"); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2017) ("[A] Rule 12(c) motion is considered timely if it is made early enough not to delay trial or cause prejudice to the non-movant."). Defendant may raise the argument that there were no vacant positions that Plaintiff could fill in a motion for summary judgment, if appropriate.

The Court finds that the First Amended Complaint (Doc. 12) sufficiently alleges a claim for failure to reasonably accommodate Plaintiff's disability under the ADA. Thus, Defendant's Motion (Doc. 60) will be denied as to this claim.

### 2.    Retaliation Claim Under the ADA

Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's retaliation claim under the ADA as well. (Doc. 60 at 11–12). The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) [] she engaged in a protected activity; (2) [she] suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

Defendant only asserts that Plaintiff failed to identify an adverse employment action; thus, the Court will focus its analysis on that element. (Doc. 60 at 11–12). Plaintiff alleges the following forms of retaliation:

> (A) [Managers] sent a carpet cleaner to [Plaintiff's] work area knowing the carpet cleaning would aggravate [Plaintiff's] COPD.
> (B) [Defendant] de-activated [Plaintiff's] badge while being on PTO[.]
> (C) Attempted to block [Plaintiff's] unemployment by falsely representing to the Arizona Department of Economic Security that [Plaintiff] quit her job. . . .
> (D) [A manager] scrutinize[ed] [Plaintiff's] emails.
> (E) Labeling [Plaintiff] as a "conspiracy theorist[.]"
> (F) Refusal to give [Plaintiff] a non-phone position.

(Doc. 12 at 10). Defendant contends that the first five acts alleged are not sufficient to show adverse employment action. (Doc. 60 at 11–12).

The Court need not go further as the sixth alleged act—"[r]efusal to give [Plaintiff] a non-phone position"—may constitute adverse employment action. To establish adverse employment action, a plaintiff employee need only show that the action

is "reasonably likely to deter employees from engaging in protected activity." *Pardi*, 389 F.3d at 850 (citation omitted). An employer's denial of reassignment "because of [the employee's] involvement in protected activities" can constitute an adverse employment action under certain circumstances. *Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir. 1991).[3] In fact, Defendant did not even raise the argument that refusal to reassign Plaintiff is not an adverse employment action. Consequently, the Court will not consider Defendant's arguments as to the first five alleged acts of adverse employment action at this time. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . . If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Defendant's Motion (Doc. 60) will be denied as to Plaintiff's retaliation claim under the ADA.

### 3. Retaliation Claim Under the ADEA

Defendant raises two principal issues in support of its argument that Plaintiff's retaliation claim under the ADEA must be dismissed. (Doc. 60 at 9–12). The Court takes each in turn.

### A. Exhaustion

Defendant first asserts that Plaintiff's ADEA claim must be dismissed as it contends that she failed to exhaust her administrative remedies. (Doc. 60 at 9–10). A plaintiff alleging a claim under the ADEA must first exhaust her administrative remedies.[4] *See* 29 U.S.C. § 626(d)(1); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099

---

[3] The Court notes that the retaliation claim in *Bouman* was brought under Title VII. 940 F.2d at 1228–29. Nonetheless, retaliation claims under the ADA "are adjudicated under the same standards as Title VII retaliation claims." *Purcell v. Am. Legion*, 44 F. Supp. 3d 1051, 1057 (E.D. Wash. 2014) (citing *Barnett*, 228 F.3d at 1121). Thus, Title VII cases are relevant to the analysis under the ADA here.

[4] The Supreme Court recently clarified that the exhaustion requirement under Title VII is not jurisdictional but rather is a "mandatory claim-processing rule" that may be waived if not timely raised by the defendant. *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849–52 (2019). This holding extends to ADEA claims. *Hodge v. Walrus Oyster House*, No. CV TDC-18-3845, 2019 WL 6069114, at *3 (D. Md. Nov. 15, 2019). While *Fort Bend County* must therefore abrogate Ninth Circuit precedent establishing that the ADEA's exhaustion requirement is jurisdictional, the distinction is without practical effect here as Defendant raised it in its first responsive pleading, (Doc. 17 at 6 (Defendant's Answer)), and Plaintiff did not raise any issue relating to waiver. *See Fort Bend County*, 139 S. Ct. at 1849, 1850–52.

(9th Cir. 2002); *Ramirez v. Kingman Hosp. Inc.*, 374 F. Supp. 3d 832, 854 (D. Ariz. 2019). To exhaust administrative remedies, a plaintiff must "fil[e] a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citations omitted); *see Ramirez*, 374 F. Supp. 3d at 854.

"Whether a plaintiff has in fact exhausted his or her administrative remedies depends on an analysis of the 'fit' between the administrative charges brought and investigated and the allegations of the subsequent judicial complaint." *Ong v. Cleland*, 642 F.2d 316, 318 (9th Cir. 1981). A plaintiff's civil claim must be "like or reasonably related to the allegations" within the charge. *See Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002); *B.K.B.*, 276 F.3d at 1100. A claim of discrimination is reasonably related to the charge's allegations where it is "within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (internal quotation marks and citations omitted); *see Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). In making that determination, relevant factors include: "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination [was] alleged to have occurred." *Vasquez*, 349 F.3d at 644 (citation omitted). If the claim is "'consistent with the plaintiff's original theory of the case' as reflected in the plaintiff's factual allegations and [her] assessment as to why the employer's conduct is unlawful," then the claim is reasonably related to the charge such that it was properly exhausted. *Lyons*, 307 F.3d at 1104 (quoting *B.K.B.*, 276 F.3d at 1100).

Here, Plaintiff has alleged retaliation both in her First Amended Complaint, (Doc. 12 at 6–8, 10), and in her charge, (Doc. 15-2). However, Plaintiff explicitly alleged retaliation in violation of the ADEA only in the complaint. In the charge, Plaintiff checked the box for disability discrimination and retaliation. (Doc. 15-2). Plaintiff

explained in the charge's narrative that she believed that she had been "retaliated against by not being approved for an accommodation in violation of the [ADA]"—specifically reassignment to a vacant position—as a result of "fil[ing] a complaint against" her manager, "Mr. Glover, in or about March 2018." (Doc. 15-2). In the First Amended Complaint, Plaintiff elaborates that there was allegedly an incident in March 2018 in which Plaintiff stated, during a group meeting, that Glover discriminated against Plaintiff and other employees based on age. (Doc. 12 at 6). Plaintiff then claims that "Glover became hostile, rude, and unprofessional," culminating in Glover's refusal to reassign Plaintiff to another position, which is consistent with Plaintiff's charge. (*Id.* at 6–8; *see* Doc. 15-2).

The Court recognizes that Plaintiff did not include any allegations related to age discrimination in her charge. (Doc. 15-2). But Plaintiff has not raised an age discrimination claim in the First Amended Complaint (Doc. 12). Rather, she alleges retaliation as a result of her conflict with Glover during March 2018. (*See* Doc. 12 at 6–8, 10). In the charge, Plaintiff describes retaliation based on this same conflict with Glover; she simply failed to include allegations that it was related to age discrimination. (Doc. 15-2).

It is axiomatic that a plaintiff may "bring suit on claims that are 'like or reasonably related' to allegations mentioned in [the] administrative charge[]." *Henry v. Regents of the Univ. of Cal.*, 37 F. Supp. 3d 1067, 1083 (N.D. Cal. 2014) (quoting *Freeman*, 291 F.3d at 636). Plaintiff exhausted her retaliation claim under the ADEA as that claim is reasonably related to the allegations of retaliation Plaintiff raised against Glover in the charge. A claim is exhausted even where the "charge does not contain the relevant legal theory" so long as the charge "contain[s] the relevant factual allegations." *See Cohen v. Clark Cty. Sch. Dist.*, No. 11-CV-1619-MLH-RJJ, 2012 WL 5473483, at *3 (D. Nev. Nov. 9, 2012) (quoting *Vasquez*, 349 F.3d at 645) (holding gender discrimination claim was exhausted despite plaintiff's failure to specifically allege gender discrimination in the charge as gender discrimination claim was based on the factual allegations of

"harassment" in the charge). The Court is hard-pressed to find that a claim based on factual allegations in the charge has not been exhausted.

The allegations in the charge and the First Amended Complaint are consistent and Plaintiff's retaliation claim under the ADEA is based on the factual allegations in the charge. Indeed, an EEOC investigation into the circumstances of Plaintiff's complaint against Glover in March 2018 is necessary to evaluate and understand Plaintiff's theory of the retaliation claim. *See Farmer Bros. Co.*, 31 F.3d at 899 (noting that employee's charge sufficiently exhausted a discriminatory layoff claim, even assuming the charge did not "explicitly [] raise a claim of discriminatory layoff," because, "in order to evaluate (or even to understand) [the employee's] theory of the case, it was *necessary* for the EEOC to investigate the circumstances of [her] layoff"). The alleged events that occurred in March 2018 center on Plaintiff's "protests" against age discrimination. (Doc. 12 at 6–8). The alleged basis of retaliation in both the First Amended Complaint (Doc. 12) and the charge was based on conflict with Glover in March 2018, the perpetrator was the same— Glover, and the timing is the same. The only information missing from the charge is that the March 2018 conflict allegedly related to Plaintiff's protests regarding age discrimination. In short, Plaintiff exhausted her ADEA claim because that claim is "like or reasonably related to allegations in the charge" as it is "consistent with [her] original theory of the case" based on the factual allegations in the charge—i.e., that she was retaliated against due to her conflict with Glover. *Lyons*, 307 F.3d at 1104 (citation omitted). Therefore, Plaintiff exhausted her ADEA claim because an EEOC investigation into retaliation forbidden by the ADEA could reasonably have resulted from the charge.

Plaintiff certainly could have more clearly alleged in the charge that her retaliation claim was based on her protests regarding age discrimination. But charges must be read with the "utmost liberality" given that they are drafted by laypersons. *B.K.B.*, 276 F.3d at 1100. Plaintiff's failure to mark the box related to age discrimination is not fatal as "[t]he crucial element of a charge of discrimination is the factual statement contained therein." *Id.* (citation omitted); *see Hill v. City of Phoenix*, No. CV-13-02315-PHX-DGC, 2014

WL 4980001, at *3 (D. Ariz. Oct. 6, 2014). Critically, the allegations in the charge and First Amended Complaint (Doc. 12) deal with the same incident of discrimination—alleged retaliation based on conflict between Plaintiff and Glover in March 2018. *See Cohen*, 2012 WL 5473483, at *3. Plaintiff's retaliation claim under the ADEA is therefore within the scope of an EEOC investigation that would "reasonably be expected to grow out of the charge" as the allegations of Plaintiff's protests against age discrimination are necessary to evaluate and understand her retaliation theory. *See Farmer Bros. Co.*, 31 F.3d at 898–99 (emphasis removed); *see also Schagene v. Spencer*, No. 13CV0333 WQH (RBB), 2018 WL 4282633, at *2 (S.D. Cal. Sept. 7, 2018) (finding retaliation claim was exhausted despite plaintiff's failure to mark box for "reprisal" because "[a] reasonable EEOC investigation of the allegations made in [p]laintiff's EEO complaint would include investigation of the same facts alleged in [p]laintiff's retaliation claim in this case"); *cf. Freeman*, 291 F.3d at 637 (finding plaintiff failed to exhaust claims for incidents of discrimination first alleged in the complaint as those incidents "would not have been necessary to, or addressed, in the scope of an investigation into the" allegations included in the charge). Plaintiff's ADEA claim is therefore reasonably related to the allegations in the charge.

In short, Plaintiff's ADEA claim alleging retaliation is reasonably related to the factual allegations in the charge, and it is reasonable to expect that the ADEA claim would be within the scope of an EEOC investigation into the factual allegations of the charge. Accordingly, Plaintiff exhausted her ADEA claim.

### B.    Prima Facie Retaliation Claim Under ADEA

Defendant also asserts that Plaintiff failed to sufficiently allege a retaliation claim under the ADEA. (*See* Doc. 60 at 11–12). The ADEA provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual,

member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). To prevail on a retaliation claim under the ADEA, a plaintiff must show: "(1) [she was] engaged in protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal link between the protected and the adverse action." *Robillard v. Opal Labs, Inc.*, 428 F. Supp. 3d 412, 453 (D. Or. 2019) (citing *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000)). Defendant asserts Plaintiff has not sufficiently alleged an adverse employment action. (Doc. 60 at 11–12).

Defendant's argument fails for the same reason it failed as to Plaintiff's retaliation claim under the ADA. Plaintiff alleged that she was denied reassignment to a vacant position as a result of her protests regarding age discrimination. (Doc. 12 at 6–8, 10). An adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *See Robillard*, 428 F. Supp. 3d at 453 (quoting *Ray*, 217 F.3d at 1242–43). Denial of reassignment "because of [the employee's] involvement in protected activities" can constitute an adverse employment action. *Bouman*, 940 F.2d at 1229.[5] It is irrelevant if the other alleged acts do not constitute adverse employment actions at this stage. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . . If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Defendant's Motion (Doc. 60) will be denied as to Plaintiff's retaliation claim under the ADEA.

---

[5] Again, the Court recognizes that the retaliation claim in *Bouman* was brought under Title VII. 940 F.2d at 1228–29. However, "[t]he ADEA retaliation provision [is] the 'equivalent of the anti-retaliation provision of Title VII.'" *Stilwell v. City of Williams*, 831 F.3d 1234, 1246–47 (9th Cir. 2016) (citation omitted). As such, Title VII cases are relevant to the analysis under the ADEA here.

1

         **d.     Conclusion**

2        The Motion for Judgment on the Pleadings (Doc. 60) will be denied. As such,

3   Plaintiff's discrimination claim under the ADA, retaliation claim under the ADA, and

4   retaliation claim under the ADEA will go forward.

5   **III.    CONDUCT IN THIS LITIGATION**

6        As the Court discussed above, the Motion for Judgment on the Pleadings

7   (Doc. 60) was filed relatively late in the case and only after Plaintiff became pro se.  The

8   Court reminds Defendant that it should not "engag[e] in hardball tactics designed to

9   avoid resolution of the merits of th[e] case." *See Ahanchian*, 624 F.3d at 1263.

10  **IV.    CONCLUSION**

11       Based on the foregoing,

12       **IT IS ORDERED** that Plaintiff's Motion for Leave to File a Late Opposition

13  Response to Defendant's Motion for Judgment on the Pleadings (Doc. 72) is

14  **GRANTED**, and therefore, Defendant's Request for Summary Disposition (Doc. 67) is

15  **DENIED**.

16       **IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the

17  Pleadings (Doc. 60) is **DENIED**.[6]

18       Dated this 29th day of July, 2020.

19

20

21                                        _____

22                                              James A. Teilborg
                                         Senior United States District Judge
23

24

25

26

27

---

28  [6] Consequently, Plaintiff's request for leave to amend contained within her response to
    the Motion (Doc. 60) is denied as moot. (*See* Doc. 70 at 16).