**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joan Wolf, | No. CV-19-04989-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Discover Financial Services Incorporated, | |
| Defendant. | |

Before the Court is Defendant's Motion for Summary Judgment (Doc. 92). Plaintiff filed a Response (Doc. 116)[1] and Defendant filed a Reply (Doc. 117). The Court now rules.

**I.   BACKGROUND**

The following facts are either undisputed or recounted in the light most favorable to Plaintiff, the non-movant. *Ellison v. Robertson*, 357 F.3d 1072, 1075–76 (9th Cir. 2004).

Plaintiff worked for Defendant for approximately 25 years from September 21, 1993 to December 3, 2018. (Docs. 12 at 5, 92 at 2). Plaintiff was originally hired as a customer service representative and then became a fraud analyst; a position Plaintiff occupied through the end of her employment with Defendant. (Doc. 92 at 2). During her career as a

---

[1] Plaintiff also submitted a Declaration in Support of Opposition to Defendant's Motion for Summary Judgment (Doc. 113) which functions as a separate statement of facts. Per the Court's November 20, 2019 Order, "parties may not file separate statements of facts or controverting statements of facts, and instead must include all facts in the motion, response or reply itself." (Doc. 30 at 4). Because of this, the Court will not consider Plaintiff's separate statement of facts in its analysis of Defendant's Motion for Summary Judgment. The Court notes, however, that the separate statement of facts is largely duplicative of the facts in Plaintiff's response, and the non-duplicative facts are irrelevant to the instant issues. Thus, even if considered by the Court, Plaintiff's separate statement of facts would not alter the Court's analysis.

fraud analyst, Plaintiff regularly worked night and weekend shifts and, because of this, was paid more than her peers who worked the day shift during the week. (*Id.*).

All fraud analysts performed the same job functions. (*Id.*). Over the course of Plaintiff's employment her job functions varied and included reviewing accounts, speaking on the phone, and "queue work," which refers to investigating accounts flagged for suspicious activity. (*Id.*).[2] An essential, and in fact the primary, job function of a fraud analyst was speaking on the phone for a full shift. (*Id.* at 3). Wolf spent her entire shift on the phone with customers unless there was an internal meeting, or she was participating in a learning exercise. (*Id.*). On occasion, fraud analysts would be pulled off the phone temporarily for special projects. (*Id.*).

Plaintiff took a medical leave of absence from August 22, 2017 to February 14, 2018, and in that time, Plaintiff got throat and nose surgery to treat sleep apnea. (Doc. 12 at 5; Doc. 92 at 4). Plaintiff returned to work on February 15, 2018 with no work restrictions. (Doc. 92 at 4).

On March 5, 2018 A.G., a Department Manager for Defendant, held a meeting for employees with high average call handling time ("AHT"), to discuss ways to reduce AHT and address any concerns or questions employees had. (*Id.* at 5, Doc. 116 at 3). Plaintiff attended the meeting and read a prepared statement. (Doc. 92 at 5). Plaintiff raised age discrimination as a possible reason for having the meeting, and A.G. became offended, raising his voice to Plaintiff. (*Id.* at 5–6) On March 9, 2019, Plaintiff and A.G. had a separate one-on-one meeting where Plaintiff again read prepared remarks after which the meeting ended. (*Id.* at 5). On March 12, 2018, Plaintiff filed a complaint with Human Resources against A.G. alleging that he was "rude, bullying, hostile, condescending and insulted her integrity" during the March 5, 2018 meeting. (*Id.* at 5–6). After Human Resources investigated the complaint, A.G. was coached on ways to run more effective meetings and better address performance issues. (*Id.* at 6).

---

[2] In 2012, an Identity Protection Team ("IPT") was created to handle queue work, so Plaintiff performed no queue work during the last five years of her employment. (*Id.* at 2–3).

- 2 -

On March 29, 2018, Plaintiff claimed that the "phone work" that was required by her position was straining her voice, and she requested no phone work until May 23, 2018 based on a doctor's recommendation. (Docs. 12 at 7, 92 at 6).[3] Plaintiff sought an accommodation from Defendant to be assigned only non-phone related work. (Docs. 92 at 6, 116 at 4). Defendant claimed that there were no available non-phone positions for Plaintiff and declined to consolidate non-phone job functions into a single new position for Plaintiff. (Doc. 92 at 6). Instead, Plaintiff was placed on temporary leave. (*Id.*).

On March 30, 2018 Employee Relations Advisor R.D. began searching for alternative jobs that would not require Plaintiff to speak on the phone. (*Id.* at 7). Plaintiff declined other alternative accommodations including working only part-time or taking extra breaks. (*Id.*; Doc. 116 at 4–5). R.D. reviewed job listings to determine if there were any vacant positions that would meet Plaintiff's needs but did not find any such position for Plaintiff.[4] (Doc. 92 at 7). Plaintiff's medical issues did not resolve, and her doctor extended her "no phone work" restrictions to July 30, 2018. (*Id.*). As a result, Plaintiff's temporary leave was extended. (*Id.*).

On July 18, 2018, Plaintiff filed an EEOC discrimination charge alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act (the "ADA"). (*Id.*). Plaintiff received her right to sue based on the charge on May 25, 2019 (Doc. 12 at 11).

Plaintiff's medical issues did not resolve by the end of July 2018, and her doctor extended her "no phone work" restrictions multiple times through December 17, 2018. (*Id.* at 8, Doc. 116 at 5). During this period, Defendant did not find a no-phone-work position for Plaintiff, so Plaintiff remained on temporary leave. (Docs. 92 at 8, 116 at 5–6). Plaintiff's leave was ultimately exhausted, so she was terminated on December 3, 2018. (Doc. 92 at 8).

---

[3] "Phone work" describes work that required speaking on the phone to customers or other Discover employees.
[4] Plaintiff disputes the diligence of the review undertaken, calling it "inconsistent" but does not appear to dispute that a review was undertaken. (*See* Doc. 116 at 5).

## II. LEGAL STANDARD

Summary judgment in favor of a party is appropriate when that party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Stated conversely, a party "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (per curiam).

The movant must first establish that there is no genuine dispute of material fact and that, based on the undisputed material facts, the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate the existence of any dispute of material fact. *Id.* at 323–24. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)). There is a genuine issue of material fact if the disputed issue of fact "could reasonably be resolved in favor of either party." *Ellison*, 357 F.3d at 1075. Material facts are those "facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the non-moving party." *Ellison*, 357 F.3d at 1075–76 (citation omitted). However, the nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact that would defeat the motion for summary judgment. *Anderson*, 477 U.S. at 247–48.

## III. ANALYSIS

Defendant moves for summary judgment on all of Plaintiff's claims including disability discrimination under the ADA, 42 U.S.C. § 12112(a), retaliation under the ADA, 42 U.S.C. § 12203(a), and retaliation under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623(d). (*See* Docs. 12, 92). The Court will analyze each claim in turn.

### a. Disability Discrimination Under the ADA

The ADA forbids an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "'[Q]ualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). An employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Id.* § 12112(b)(5)(A). Therefore, a plaintiff can establish a prima facie case for failure to accommodate under the ADA where she establishes: "(1) she is disabled; (2) she is qualified for the job in question and capable of performing it with reasonable accommodation; (3) the employer had notice of her disability; and (4) the employer failed to reasonably accommodate her disability." *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1030 (W.D. Wash. 2015) (citations omitted).

Defendant, in its motion for summary judgment, does not contest that Plaintiff is disabled or that she provided notice of her disability. (*See* Doc. 92 at 9). Defendant does, however, dispute the other two elements for Plaintiff's disability claim.

### 1. Qualified for the Job in Question

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, to determine if Plaintiff is qualified for the job in question, the Court must consider whether Plaintiff "can perform the job's essential functions without reasonable accommodation, and then, if [she] cannot, whether [she] can do so with

reasonable accommodation." *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006) (citing *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003)).

"The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); *see Dark*, 451 F.3d at 1087. Among other factors, a court should consider the employer's judgment as to what the essential functions of the job are, and if an employer has prepared a written job description, this description shall be considered evidence of the essential functions of the job. 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(n)(2)(i-iii). It is the plaintiff's burden to demonstrate that she can perform the essential functions of the job. *Kennedy v. Applause*, 90 F.3d 1477, 1481 (9th Cir. 1996) (citing *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990)); *Sevcik v. Unlimited Const. Servs., Inc.*, 462 F. Supp. 2d 1140, 1147 (D. Haw. 2006).

Defendant argues that Plaintiff is not a qualified individual within the meaning of the ADA because her disability permanently prevents her from performing phone work, an essential function of her position. (Doc. 92 at 9). Plaintiff responds that phone work is not essential to her position as a fraud analyst and that there is no evidence that she is permanently disabled or that she is currently unable to perform phone work. (*See* Doc. 116 at 8–9).

Plaintiff was employed as a Senior Fraud Analyst. (Doc. 92-2 at 5). A.G., Plaintiff's Department Manager, stated that phone work was an essential function of Plaintiff's job. (*Id.* at 53). The job description for Plaintiff's position lists handling calls and other phone work as essential functions. (*See* Doc. 116-1 at 67–68; *see also* Doc. 116-1 at 69 (listing phone related work as a major responsibility of critical importance)). Plaintiff herself stated that her job required her to be on the phone for her entire shift unless she had meetings or training exercises. (Doc. 92-2 at 19–20). Further, when describing how her ability to perform the essential functions of her job was limited on her reasonable accommodation request form, Plaintiff wrote primarily about her challenges with speaking on the phone.

(*See id.* at 59–60). Examining all the evidence, the Court finds that there is no genuine dispute that phone work is an essential function of the Senior Fraud Analyst position. Thus, Plaintiff must demonstrate that she can perform phone work to be considered qualified for the job in question. *See* 42 U.S.C. § 12111(8).

Defendant has presented evidence that Plaintiff is still unable to perform phone work and has not been able to perform phone work since March of 2018. (*See* Docs. 92-2 at 36–37, 50, 58–67, 76–77). Plaintiff, conversely, has presented no evidence that she is able to perform phone work or has been able to do so at any point since March of 2018. The most recent letter from Plaintiff's doctor produced by either party notes that Plaintiff was restricted from phone work until her next evaluation and after the completion of voice therapy. (*Id.* at 67). Plaintiff produced no evidence that she was cleared to return to phone work after that evaluation or that she completed voice therapy. In fact, Plaintiff stated in her deposition that she was unable to do phone work on December 3, 2018 and "would have difficulties" doing phone work now. (*Id.* at 50). The only support Plaintiff offers for her contention that she can perform phone work are her own statements, but Plaintiff's bare assertions, standing alone, are insufficient to create a material issue of fact. *Anderson*, 477 U.S. at 247–48.

Additionally, Plaintiff has identified no reasonable accommodation that would allow her to perform phone work and stated that accommodations such as reduced hours and increased breaks were not acceptable. (Doc. 116 at 4–5); *see Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1161 (10th Cir. 2014) (holding that a plaintiff's claim under the ADA fails if there is "no question she wasn't able to perform the essential functions of her job even with a reasonable accommodation").

The Court concludes that Plaintiff has not demonstrated that she could perform the essential functions of the job she held with or without reasonable accommodations. Defendant has shown that there are no genuine disputes as to any material facts and that it is entitled to judgment as a matter of law on the instant claim.

### 2. Reasonable Accommodation

Although Plaintiff's claim fails because she was not qualified for the job at issue, the Court will also examine whether Defendant reasonably accommodated Plaintiff. Again, the burden rests on Plaintiff to show the existence of a reasonable accommodation that would allow her to perform the essential functions of an available job with Defendant. *Dark*, 451 F.3d at 1088 (citing *Zukle v. Regents of University of California*, 166 F.3d 1041, 1046 (9th Cir. 1999)). However, at the summary judgment stage, Plaintiff "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *Dark*, 451 F.3d at 1088 (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002)). The ADA, in relevant part, defines the term "reasonable accommodation" as: "job restructuring, part-time or modified work schedule, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

"Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Mem. Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). "An appropriate reasonable accommodation must be effective[] in enabling the employee to perform the duties of the position." *Id.* "The interactive process is the key mechanism for facilitating the integration of disabled employees into the workplace." *Vanderpool v. Sysco Food Servs. of Portland, Inc.*, 177 F. Supp. 2d 1135, 1140–41 (D. Or. 2001) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated sub nom. US Airways, Inc.*, 535 U.S. 391).

Accordingly, "[t]he interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is

reasonable and effective." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citation omitted); *see also* 29 C.F.R. Pt. 1630, App. (noting that an employer "should . . . [c]onsider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer"). The employer's duty to explore possible accommodations "is a continuing duty that is not exhausted by one effort." *McAlindin v. County of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999) (internal quotation marks and citation omitted), *opinion amended on denial of reh'g*, 201 F.3d 1211 (9th Cir. 2000). The employer is not required to provide the accommodation that an employee requests and is only required to provide "some reasonable accommodation." *EEOC v. UPS Chain Solutions*, 620 F.3d 1103, 1110–11 (9th Cir. 2010). "Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Humphrey*, 239 F.3d at 1137–38 (citation omitted).

Defendant asserts that it engaged in the interactive process and provided Plaintiff with a reasonable accommodation by placing Plaintiff on temporary leave until she could perform the essential functions of her position. (Doc. 92 at 10). Plaintiff argues that temporary leave was not a reasonable accommodation in her case, and Defendant should have accommodated her in other ways through an interactive process.

### A.     The Interactive Process

The Court finds that there is no genuine dispute that Defendant engaged Plaintiff in the interactive process. Plaintiff admits that she spoke with Defendant's Human Resources department "on numerous occasions regarding an accommodation." (Doc. 1-4 at 1). Defendant discussed options for accommodation, other than temporary leave, with Plaintiff such as "additional breaks, a reduced work schedule, or a different schedule under which [Plaintiff] could work one day on, two days off," and Plaintiff rejected these options. (Doc. 92-2 at 76–77; *see* Docs. 116 at 11, 116-1 at 27, 29); *see also* 42 U.S.C. § 12111(9)(B) (defining "reasonable accommodation" to include "part-time or modified work schedule, . . ."). Defendant further considered Plaintiff's request to hold a position that did not require

speaking on the phone, but none were available. (*See* Doc. 116-1 at 37–38). Additionally, evidence submitted by Plaintiff shows that Defendant looked for, but could not find, a vacant position that Plaintiff could fill with her inability to speak on the phone. (*See* Doc. 116-1 at 21, 36; *see also* Doc. 92-2 at 76–77 (Declaration of R.D. outlining Defendant's repeated efforts to find a vacant position for Plaintiff that did not require phone work)).

The parties' submissions show that Defendant directly communicated with Plaintiff to explore in good faith possible accommodations, that Defendant considered Plaintiff's request to hold a position that did not require speaking on the phone, and that Defendant offered Plaintiff accommodations including a part-time or modified work schedule which Plaintiff declined. With its other accommodations declined, Defendant placed Plaintiff on temporary leave so that she could recover and return when able to do phone work. Even if Defendant engaged in the interactive process in good faith, however, Plaintiff's temporary leave must still have been a reasonable accommodation.

## B. Temporary Leave as a Reasonable Accommodation

Similarly, the Court finds that there is no genuine dispute that placing Plaintiff on temporary leave so she could recover and return when able to perform phone work was a reasonable accommodation. "A leave of absence for medical treatment may be a reasonable accommodation under the ADA" so long as it will "permit [an employee], upon [her] return, to perform the essential functions of [her] job." *Humphrey*, 239 F.3d at 1135–36; *see Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (holding that extended medical leave "may be a reasonable accommodation if it does not pose an undue hardship on the employer"). An employer is not required, however, to give an employee indefinite leave as a reasonable accommodation. *See Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 744 (9th Cir. 2011) (employer not required to further extend disability period where its actions afforded a reasonable period to rehabilitate); *Yates v. Health Servs. Advisory Grp., Inc.*, No. 2:16-cv-04032-CAS-PLA, 2017 WL 3197228, at *8 (C.D. Cal. July 24, 2017) ("Given that plaintiff could not provide an anticipated date for her return, plaintiff's doctors continued to diagnose her as temporarily

1  totally disabled, and plaintiff's doctor did not release her for work until a year after her
2  termination, plaintiff has not met her initial burden of demonstrating that she was qualified
3  for the job or that additional leave was a reasonable accommodation that would have
4  enabled her to perform essential job duties."); *Rabara v. Heartland Employment Servs.*,
5  LLC, No. 17-CV-03770-LHK, 2019 WL 1877351, at *15 (N.D. Cal. Apr. 26, 2019)
6  ("Plaintiff has presented no evidence that she could return to work any day since her
7  December 2014 termination, more than four years ago. The undisputed facts in the record
8  demonstrate that Plaintiff's final leave request was in fact indefinite, and therefore she
9  could not have performed the essential functions of her job.").

10  When Plaintiff initially requested accommodations due to her medical condition,
11  she requested these accommodations on a temporary basis until she could recover. (*See*
12  Doc. 92-2 at 59). The accommodation she requested was to have certain portions of IPT
13  employees' jobs, queue work, taken from them and combined into a "temporary job" for
14  her. (*See id.* at 59–60). Defendant had no equivalent position consisting of only queue
15  work, (Doc. 92-2 at 76), and Plaintiff presented no evidence of any such position.[5] *See*
16  *Gomez v. Am. Bldg. Maint.*, 940 F. Supp. 255, 260 (N.D. Cal. 1996) ("[A]n employer is
17  not required to consider reassignment except to a position equivalent, in terms of pay and
18  other job status, to the one presently held by the disabled employee."). In fact, Plaintiff
19  submitted the Declaration of H.B. which stated that, as a member of the IPT team, she
20  "spent about 30% of the day on the phones." (Doc. 116-1 at 13). "An employer is not
21  required to create a new position to accommodate the disabled worker, or to reallocate
22  'essential functions.'" *Gomez*, 940 F. Supp. at 260; *see Wellington v. Lyon County School*

---

[5] Plaintiff submitted the Declaration of J.F.H. in which J.F.H. states that there were non-phone work positions available with "Discover charities in the form of a non phone [sic] secretarial job" and "compliance, which are non-phone positions." (Doc. 116-1 at 8). Plaintiff, however, does not provide any evidence that these positions are equivalent to the Senior Fraud Analyst position or were actually available during Plaintiff's temporary leave, nor does she even argue that she should have been offered these positions in her Response. Such unsupported assertions are not enough to create a genuine dispute of fact, and the Court will not presume that the necessary support for these assertions exists. *See Allfrey v. Mabus*, 770 F. Supp. 2d 1128, 1133 (W.D. Wash. 2011) (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990)) ("Conclusory, non specific statements in affidavits are not sufficient, and 'missing facts' will not be 'presumed.'").

- 11 -

1 *District*, 187 F.3d 1150, 1155 (9th Cir. 1999). Thus, Defendant was not required to comply with Plaintiff's request that a "temporary job" be created by reallocating the essential functions of the IPT team.

Further, because Plaintiff sought only a temporary accommodation until she could recover, temporary leave was a reasonable accommodation. *See Humphrey*, 239 F.3d at 1135–36; *Nunes.*, 164 F.3d at 1247; *Lucent Techs.*, 642 F.3d at 744 (holding that a finite leave of absence is a reasonable accommodation under the ADA, provided it is likely that, following the leave, the employee will be able to perform his or her duties). While Plaintiff did not select temporary leave as an accommodation, Defendant was not required to give Plaintiff her preferred accommodation, only a reasonable one. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation.")

The Court concludes that there is no genuine dispute that Defendant engaged in the interactive process and reasonably accommodated Plaintiff by providing her with temporary leave to recover. Further, when Plaintiff did not recover after months of leave, it became clear that no reasonable accommodation would allow Plaintiff to perform the essential functions of her job. *See supra* Section III.a.1. Defendant has shown that there are no genuine disputes as to any material facts and that it is entitled to summary judgment on Plaintiff's discrimination claim as a matter of law. *See Sevcik*, 462 F. Supp. 2d at 1149 (granting defendant's summary judgment motion on plaintiff's ADA claim because plaintiff failed to show that he was qualified for the job in question or that Defendant failed to reasonably accommodate him).

### b. Retaliation

Plaintiff alleges claims of retaliation under both the ADA, 42 U.S.C. § 12203(a); and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d). (Doc. 12). To establish a retaliation claim under the ADA or the ADEA, a plaintiff must show: (1)

she was engaged in protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal link between the protected activity and adverse action. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004); *Robillard v. Opal Labs, Inc.*, 428 F. Supp. 3d 412, 453 (D. Or. 2019) (citing *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000)).

Plaintiff claims that Defendant retaliated against her on numerous occasions in the following ways:

> (A) [Managers] sent a carpet cleaner to [Plaintiff's] work area knowing the carpet cleaning would aggravate [Plaintiff's] COPD.
> (B) [Defendant] de-activated [Plaintiff's] badge while being on [Paid Time Off.]
> (C) Attempted to block [Plaintiff's] unemployment by falsely representing to the Arizona Department of Economic Security that [Plaintiff] quit her job. . . .
> (D) [A manager] scrutinize[ed] [Plaintiff's] emails.
> (E) Labeling [Plaintiff] as a "conspiracy theorist[.]"
> (F) Refusal to give [Plaintiff] a non-phone position.
> [(G)] [Defendant] did not consider [Plaintiff] for [an available non-phone] position[.]

(Doc. 12 at 5–6, 10). Defendant addresses the sixth claim separately and the other claims together. The Court will do the same.

### 1. Refusal to Give Plaintiff a Non-Phone Position

Regardless of whether Plaintiff engaged in protected activity, Plaintiff has failed to present any evidence of an adverse employment action in Defendant's refusal to give Plaintiff a non-phone position. To establish adverse employment action, a plaintiff employee need only show that the action is "reasonably likely to deter employees from engaging in protected activity." *Pardi*, 389 F.3d at 850 (citation omitted). Here, Plaintiff has shown no evidence of any equivalent non-phone position that was available for her as a reasonable accommodation. *See supra* Section III.a. Thus, the evidence shows that Defendant's refusal to give Plaintiff a non-phone position was not an adverse employment action, but simply a result of Defendant having no available non-phone positions for Plaintiff to fill. Because Plaintiff has presented no evidence to raise a genuine dispute

1  regarding Defendant's refusal to give Plaintiff a non-phone position, Defendant is entitled
2  to summary judgment on this claim as a matter of law.

### 2. Plaintiff's Other Claims

In response to Plaintiff's other claims of retaliation, Defendant argues that (1) Plaintiff failed to exhaust her administrative remedies; (2) acts that occurred before September 2017 are time barred; and (3) that none of the remaining claims of retaliation are adverse employment actions. (Doc. 92 at 15–17). The Court will address each argument in turn.

### A. Exhaustion

A plaintiff alleging a claim under the ADA or the ADEA must first exhaust her administrative remedies. *See Davis v. California State Pers. Bd.*, 22 F. App'x 793, 794 (9th Cir. 2001) (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)); 29 U.S.C. § 626(d)(1); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002); *Ramirez v. Kingman Hosp. Inc.*, 374 F. Supp. 3d 832, 854 (D. Ariz. 2019). To exhaust administrative remedies, a plaintiff must "fil[e] a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citations omitted); *see Ramirez*, 374 F. Supp. 3d at 854.

"Whether a plaintiff has in fact exhausted his or her administrative remedies depends on an analysis of the 'fit' between the administrative charges brought and investigated and the allegations of the subsequent judicial complaint." *Ong v. Cleland*, 642 F.2d 316, 318 (9th Cir. 1981). A plaintiff's civil claim must be "like or reasonably related to the allegations" within the charge. *See Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002); *B.K.B.*, 276 F.3d at 1100. A claim of discrimination is reasonably related to the charge's allegations where it is "within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Farmer Bros.*, 31 F.3d at 899 (internal quotation marks and citations omitted); *see Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). In

making that determination, relevant factors include: "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination [was] alleged to have occurred." *Vasquez*, 349 F.3d at 644 (citation omitted). If the claim is "'consistent with the plaintiff's original theory of the case' as reflected in the plaintiff's factual allegations and [her] assessment as to why the employer's conduct is unlawful," then the claim is reasonably related to the charge such that it was properly exhausted. *Lyons*, 307 F.3d at 1104 (quoting *B.K.B.*, 276 F.3d at 1100).

Defendant argues that Plaintiff's remaining claims are not exhausted because they "are separate and unrelated to those claims raised in her [EEOC] Charge," citing *Freeman*. (Doc. 92 at 16). *Freeman*, however, involved allegations of discrimination that implicated different people, times, and subject matters than the allegations in the Plaintiff's EEOC charge. *Freeman*, 291 F.3d at 364–66. Here, Plaintiff's remaining claims of retaliation are reasonably related to the claims within her EEOC charge. Plaintiff's charge, in part, indicates that she was retaliated against "due to rumor [sic] created by [D.S.] that caused [her] to file complaint [sic] w/ HR." (Doc. 19-2 at 81). Plaintiff also includes A.G. in her charge, lists J.F.H. as a witness, and alleges that she was denied an accommodation for her disability. (*Id.* at 81–83). These facts allege the same basis of discrimination and involve the same perpetrators and locations as Plaintiff's remaining claims. *See Vasquez*, 349 F.3d at 644. Thus, the claims would be within the scope an EEOC investigation which could reasonably grow out of Plaintiff's charge. *See Farmer Bros.*, 31 F.3d at 899. Because EEOC charges must be read with the "utmost liberality," *B.K.B.*, 276 F.3d at 1100, the Court finds that Defendant is not entitled to summary judgment on the remaining claims due to Plaintiff's alleged failure to exhaust. *See Vasquez*, 349 F.3d at 645–46, (holding that a claim should not be barred for failure to exhaust when it "could have 'grown out of the [Plaintiff's EEOC] charge'" (alterations omitted)).

### B.     Acts Before September 2017

Plaintiff alleges that, in July of 2017, Defendant retaliatorily refused to consider her

for a job opening. (Doc. 12 at 5–6). Defendant argues that this claim is time barred because it occurred more than three-hundred days before Plaintiff's EEOC charge. (Doc. 92 at 16–17).

To be able to file a claim under the ADA or AEDA, a Plaintiff must first file a charge with the EEOC either one-hundred-eighty or three-hundred days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1).[6] The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002). The Ninth Circuit has applied this standard to bar claims even when the time barred claims were a part of the same "discriminatory policy." *See Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003)

Because there is no genuine dispute that Plaintiff filed the instant charge more than three-hundred days after the alleged retaliation in 2017, Plaintiff's claim that Defendant did not consider her for an available non-phone position is time barred as a matter of law.

### C.     Adverse Employment Actions

Defendant finally argues that it is entitled to summary judgment on Plaintiff's remaining claims of retaliation because these claims do not constitute adverse employment actions. (Doc. 92 at 17). Plaintiff responds that each of her remaining claims constitutes an adverse employment action because it "might deter a reasonable person from engaging in protected activity." (Doc. 116 at 16).

"[R]etaliation claims may be brought against a much broader range of employer conduct than substantive claims of discrimination." *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018). To establish adverse employment action, a plaintiff employee need only show that the action is "reasonably likely to deter employees from engaging in protected activity." *Pardi*, 389 F.3d at 850 (citation omitted). Trivial harms

---

[6] Title VII is relevant to the instant claims because retaliation claims under the ADA "are adjudicated under the same standards as Title VII retaliation claims." *Purcell v. Am. Legion*, 44 F. Supp. 3d 1051, 1057 (E.D. Wash. 2014) (citing *Barnett*, 228 F.3d at 1121). Further, "[t]he ADEA retaliation provision [is] the 'equivalent of the anti-retaliation provision of Title VII.'" *Stilwell v. City of Williams*, 831 F.3d 1234, 1246–47 (9th Cir. 2016) (citation omitted).

and minor annoyances, however, "cannot support a claim of retaliation." *Annenberg v. Clark Cty. Sch. Dist.*, 818 F. App'x 674, 677 (9th Cir. 2020) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Indeed, filing a claim of discrimination or retaliation "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68. So, while a plaintiff must only show that an employer's action would have dissuaded a reasonable worker from making a charge of retaliation, "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* This standard is designed to "screen out trivial conduct." *Id.* at 70.

Plaintiff's remaining claims for retaliation consist of:

(A) [Managers] sent a carpet cleaner to [Plaintiff's] work area knowing the carpet cleaning would aggravate [Plaintiff's] COPD.
(B) [Defendant] de-activated [Plaintiff's] badge while being on [Paid Time Off.]
(C) Attempted to block [Plaintiff's] unemployment by falsely representing to the Arizona Department of Economic Security that [Plaintiff] quit her job. . . .
(D) [A manager] scrutinize[ed] [Plaintiff's] emails.
(E) Labeling [Plaintiff] as a "conspiracy theorist[.]"

(Doc. 12 at 10). Plaintiff has presented no evidence to show that these incidents rise above minor annoyances and constitute adverse employment action.

To begin, Plaintiff provided no evidence that the carpet cleaning in her area was an adverse employment action. Plaintiff submitted a declaration of J.F.H. in which J.F.H. notes that she too had issues with the carpet cleaning. (Doc. 116-1 at 4). J.F.H., however, does not argue that the carpet cleaning was retaliatory, but a routine practice by Defendant that "aggravated [J.F.H.'s] symptoms." (*Id.*). Plaintiff submitted no evidence showing that the carpet cleaning was anything but a routine practice, (*See* Doc. 116-1), and the Ninth Circuit has held that routine practices do not rise to the level of adverse employment actions, *see Sillars v. Nevada*, 385 F. App'x 669, 671 (9th Cir. 2010) (noting that transferring an employee could not constitute adverse employment action because it was a routine practice). While the carpet cleaning may have caused Plaintiff discomfort, such

"trivial harms" and "minor annoyances" do not rise to the level of adverse employment actions. *Annenberg*, 818 F. App'x at 677 (citing *Burlington*, 548 U.S. at 68).

Next, Plaintiff similarly provides no evidence that the deactivation of her badge was an adverse employment action. Per evidence submitted by Plaintiff, Defendant deactivated Plaintiff's badge because she was on a leave of absence due to her disability. (*See* Doc. 116-1 at 46). Defendant presented evidence that its policies "require access badges be deactivated after 17 days of non-activity." (Doc. 92-2 at 77). Thus, the routine deactivation of Plaintiff's badge due to her leave of absence cannot constitute an adverse employment action. *See Sillars*, 385 F. App'x at 671. Further, the trivial inconvenience of having one's badge deactivated while out on paid time off does not rise to the level of an adverse employment action. *See Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1169 (9th Cir. 2014) (noting that trivial workplace annoyances do not rise to the level of adverse employment actions).

Next, Plaintiff again fails to present evidence that Defendant's communication with the Arizona Department of Economic Security ("ADES") constituted an adverse employment action. While Plaintiff's evidence shows that Defendant listed Plaintiff's reason for termination as a voluntary failure to return, Plaintiff's evidence also shows that Defendant did not intend to dispute her unemployment benefits claim. (*See* Doc. 116-1 at 70–73). Even if Defendant erred in listing Plaintiff's reason for termination, Plaintiff has not pointed to any evidence to support the notion that such an action is the type of "material adversity" that would reasonably chill an employee from exercising her protected rights in the future. *See Campbell*, 892 F.3d at 1021 (noting that the mishandling of a teacher's records was not the type of "material adversity" that would reasonably chill a teacher from exercising her protected rights in the future). Thus, Plaintiff has failed to prove that Defendant's communication with ADES constituted an adverse employment action.

Finally, Plaintiff fails to present evidence that Defendant's scrutinizing Plaintiff's emails and labeling Plaintiff a "conspiracy theorist" constituted adverse employment actions. Plaintiff argues that Defendant "scrutinized her emails twice" and labeled her as

someone who "conspired to file a lawsuit." (Doc. 12 at 6). Such trivial intrusions, as a matter of law, do not constitute adverse employment actions. *See Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005), *amended on denial of reh'g*, 433 F.3d 672 (9th Cir. 2006), *amended on denial of reh'g*, 436 F.3d 1050 (9th Cir. 2006) (noting that "snide remarks" and even "threats" do not rise to the level of adverse employment actions); *Lusk v. Senior Servs.*, 605 F. App'x 643, 645 (9th Cir. 2015) (holding that examining and adding to a plaintiff's personnel file did not constitute an adverse employment action). While such actions by Defendant may have affected Plaintiff's enjoyment of her work environment, "there is no evidence that the [acts at issue] went so far as to interfere in Plaintiff's job responsibilities." *Hellman v. Weisberg*, 360 F. App'x 776, 778 (9th Cir. 2009). While an employee may not enjoy certain actions by their employer, making a claim of discrimination "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.

None of Plaintiff's remaining claims of retaliation rise to the level of an adverse employment action as a matter of law. Thus, Defendant has shown that there is not a genuine dispute as to Plaintiff's retaliation claims and is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 92) is GRANTED.

**IT IS FURTHER ORDERED** that this case is dismissed in its entirety **WITH PREJUDICE,** and the Clerk of the Court shall enter judgment accordingly.

Dated this 8th day of February, 2021.

James A. Teilborg
Senior United States District Judge